UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THAD LAVALLEE,                    ) | |
| Plaintiff                                    ) | Civil Action No. 22-10554 |
| v.                                             ) | |
| TOWN OF DEDHAM, DEDHAM PUBLIC   ) | |
| SCHOOLS, MICHAEL WELCH, in his individual  ) | |
| capacity, and JAMES FORREST, in his individual ) | |
| Defendants                              ) | |

COMPLAINT & JURY DEMAND

NATURE OF COMPLAINT

1. As alleged more fully below, Plaintiff Thad LaVallee, former teacher at Dedham High School, was ordered by the defendants, including by way of threats and intimidation, to stand for the Pledge of Allegiance (Pledge) during its recitation every morning *before* instruction began.  Such demand, alone, is unconstitutional.  In response to LaVallee's refusal to stand, defendants embarked on a retaliatory campaign culminating in LaVallee's termination of employment.  These acts of retaliation, also, were unconstitutional.  Standing for the Pledge was not part of LaVallee's job duties.  It was clear to everyone, including LaVallee's sophomore grade students, that LaVallee's sitting for the Pledge was a personal decision – and not the voice of the school.  LaVallee's sitting neither disturbed LaVallee's class nor Dedham High School operations.  LaVallee never attempted to interfere with his students' right to stand for the Pledge.  LaVallee never treated any student differently on account of their standing or not standing for the Pledge.

2. LaVallee went above and beyond for his students and for this he was revered by students and parents alike, who went out of their way to ensure that their children were placed in

LaVallee's class.  In addition to violating LaVallee's civil rights to Free Speech and Free Exercise, the defendants' actions were a disservice to the student body at Dedham High School.

## PARTIES

3. Plaintiff Thad LaVallee, PhD, is a natural person residing in Sharon, Massachusetts. From August 2017 through June 20, 2019, LaVallee was a full-time teacher at Dedham High School.

4. Defendant Town of Dedham (Town) is a town in Norfolk County, Massachusetts.

5. Defendant Dedham Public Schools (District) is an arm, agent, or instrumentality of the Town's municipal government, comprised of four elementary schools, one middle school, and one high school, Dedham High School (School).

6. Defendant James Forrest (Principal Forrest) is the School Principal at Dedham High School and a resident of Norwood, Massachusetts.

7. Principal Forrest is being sued in his individual capacity and at all times described herein was acting under color of law.

8. Defendant Michael Welch (Superintendent Welch) is the District Superintendent and a resident of Framingham, Massachusetts.

9. Superintendent Welch is being sued in his individual capacity and at all times described herein was acting under color of law.

10. The Town, Dedham Public Schools, Principal Forrest, and Superintendent Welch will be referred to herein as the "Defendants."

11. Principal Forrest and Superintendent Welch will be referred to herein as the "Individual Defendants."

## FACTS

12. With over twenty years of teaching experience, LaVallee began his full-time District employment in August 2017, serving as Dedham High School's English Language Arts (ELA) teacher and Special Education (SPED) liaison.  LaVallee taught sophomore grade students at the School.

13. Throughout his first year of employment, the 2017-2018 academic year, Dr. LaVallee received letters of recognition from his ELA and SPED department chairs and administrators.

14. LaVallee performed well throughout his tenure and received many thank you notes from students and parents.

15. Parents requested to the school that their child be placed in LaVallee's class.

16. Every morning throughout LaVallee's tenure, the Pledge of Allegiance was recited over the School intercom.

17. The Pledge of Allegiance was recited by School students.

18. The Pledge of Allegiance recited at the School was as follows: "I pledge allegiance to the Flag of the United States of America, and to the Republic for which it stands, one Nation under God, indivisible, with liberty and justice for all."

19. LaVallee never stood for the Pledge during his tenure at the School.

20. LaVallee does not stand for the Pledge of Allegiance in accordance with his own political and religious beliefs.

21. LaVallee's political reasons are extensive, including but in no way limited to his view that liberty and justice is not afforded to all, evidence of which abounds daily.

22. LaVallee is an atheist.

23. LaVallee has never stood for the Pledge throughout his entire teaching career.

24. LaVallee never attempted to interfere with any of the School's students' right to stand for the Pledge.

25. LaVallee not standing for the Pledge never caused any disruption to LaVallee's teaching.

26. LaVallee not standing for the Pledge never caused any disruption to Town operations.

27. LaVallee not standing for the Pledge never caused any disruption to School operations.

28. The Pledge was not part of School curriculum.

29. The Pledge was not part of ELA curriculum.

30. The Pledge was not part of SPED curriculum.

31. Standing for the Pledge was not a job duty of LaVallee.

32. Standing for the Pledge was not within the scope of LaVallee's job duties.

33. Standing for the Pledge was not ordinarily within the scope of LaVallee's job duties.

34. Not standing for the Pledge was not done pursuant to LaVallee's job duties.

35. In mid-September of LaVallee's second academic year, Principal Forrest arranged a meeting (Meeting) between LaVallee and a parent complaining that LaVallee does not stand for the Pledge (Complaining Parent).

36. At this meeting, the Complaining Parent said LaVallee was anti-American, anti-police, and probably pro-Muslim, ergo a supporter of terrorists.  The Complaining Parent belligerently went on to state that LaVallee was a threat to children and that he had reported LaVallee to the police.  Finally, the Complaining Parent threatened LaVallee by *producing photos of LaVallee's children* at the Meeting.  Shocked and horrified that this parent inexplicably had pictures of LaVallee's children *and wanted him to know that he had these pictures*, LaVallee was nonetheless forced to explain by Principal Forrest that

he had remained seated since the outset of his tenure without incident and that the classroom remained orderly and respectful.

37. Upon information and belief, Principal Forrest knew or should have known that Complaining Parent would threaten LaVallee at the Meeting, but, nonetheless, facilitated the Meeting, placing LaVallee and his family in danger.

38. Principal Forrest had a duty to stop the Meeting, which he did not do.  On the contrary, Principal Forrest subsequently berated LaVallee for pushing a "political agenda" and making clear that LaVallee is "required" to stand for the Pledge of Allegiance.  LaVallee clarified that he is not pushing any agenda, but rather is exercising his own constitutionally protected rights.  Principal Forrest threated to terminate LaVallee's employment if he did not comply.  Such order stood until LaVallee's termination – and was neither supported by a compelling governmental interest nor narrowly tailored to any governmental interest.

39. When it became clear that LaVallee would not stand for the Pledge of Allegiance, the Defendants pursued a retaliatory campaign against LaVallee.

40. For example, LaVallee was ordered for the first time in his career to submit weekly lesson plans.

41. Upon information and belief, School teachers that stood for the Pledge of Allegiance were not required to submit weekly lesson plans.

42. Upon information and belief, no other ELA or SPED teachers were required to submit weekly lesson plans.

43. Another example of retaliation was a newly imposed requirement that LaVallee meet weekly with his department chairperson to discuss his curriculum and pedagogy.

44. Upon information and belief, School teachers that stood for the Pledge of Allegiance were not required to meet weekly with their respective department chairperson to discuss curriculum and pedagogy.

45. Upon information and belief, no other ELA or SPED teachers were required to meet weekly with their respective department chairperson to discuss curriculum and pedagogy.

46. Principal Forrest and other administrators began to seize upon any opportunity to unjustifiably criticize LaVallee and attack him for picayune matters that were ignored for other teachers.  For example, Principal Forrest berated LaVallee for making minor spelling mistakes on his students' draft Individualized Education Programs ("IEPs").  By contrast – other teachers who, upon information and belief, did stand for the Pledge of Allegiance – made consequential errors on IEPs, *e.g.*, omission of student goals and substantive modifications, but those documents were never corrected and those teachers faced no reprimand.

47. In or about early November 2018, to build a pretext for the termination of Dr. LaVallee's employment, School administrators began issuing him false, subjective, and critical classroom observations that were inconsistent with, and in some instances directly contradicted by, observations LaVallee received prior to September 2018.

48. For example, on or about November 29, 2017 – before he was targeted for his protected speech and religious observation – LaVallee was lauded for "provid[ing] a clear model of what was expected from students for the writing assignment," whereas on or about February 26, 2019 – after the retaliatory campaign commenced – he was criticized for not providing students with "clear expectations so that they know what they need to do to be successful."

49. Where LaVallee was described on or about February 26, 2018, as "mov[ing] around the room seamlessly, checking in with groups and helping each group strive for deeper conversation," he was later criticized on or about November 1, 2018, for not making his lesson "student-centered" enough.

50. The pretextual nature of the Defendants actions is made pellucid by the outpouring of support from Dedham High School's student body in reaction to LaVallee's termination.

51. Principal Forrest gave conflicting and untrue statements to School students as to the reasoning behind LaVallee's termination, including that he was terminated because of budget cuts, for not following rules, and poor performance.

52. Another sign of Defendants' animus is that School students knew about the termination before LaVallee himself.

53. LaVallee received notes throughout his tenure, including during the 2018-2019 school year, from students thanking him for his work and how much he had impacted their lives.

54. To set up LaVallee for failure and/or drive him out, the Defendants more than doubled the number of students in LaVallee's classes after his refusal to stand for the Pledge. This also belies any contention that LaVallee's teaching was anything less than stellar.

55. Then chair of ELA at the School, Brenda Hagan, and School assistant principal, Kristy Yankee, participated in the retaliation and termination of LaVallee because of their disagreement with LaVallee's refusal to stand for the Pledge, including pretextual false evaluations.

56. On May 3, 2019, Principal Forrest told LaVallee that the School would not be renewing his contract for the following school year.

57. Principal Forrest told LaVallee that the decision not to renew LaVallee's contract had nothing to do with budgetary concerns, but was because LaVallee had refused to make changes he was asked to make, referring to his refusal to stand for the Pledge of Allegiance.

58. Dedham Public Schools formally notified LaVallee of his termination in a letter dated June 7, 2019, addressed to LaVallee, informing him that his "employment as a Teacher in the Dedham Public Schools will not be renewed for the 2019 – 2020 school year."  The letter went on to state "Thus, your last day of work will be June 20, 2019."  The letter was signed by Superintendent Welch, with Principal Forrest in copy.

59. LaVallee was a union employee with a contractual relationship with the School.

60. The Defendants' actions complained of herein were made because of LaVallee's private political and religious expressions.

61. As a direct and proximate result of Defendants' actions, LaVallee has suffered and continues to suffer damages, including, but not limited to, severe emotional, reputational, and monetary harm.

## MUNICIPAL LIABILITY

62. It is District practice that teachers stand for the Pledge.  LaVallee is not aware of any other teachers at the School that did not stand for the Pledge.  Upon information and belief, all other teachers at the School stood for the Pledge.

63. It is District policy to comply with G.L. c. 71.  Town of Dedham Charter § 3-3.

64. It is District practice to comply with G.L. c. 71.

65. Superintendent Welch possesses final policymaking authority with regards to enforcement of District policy and/or practice at the School and approved of Principal Forrest compelling LaVallee to stand for the Pledge of Allegiance.  G.L. c. 71, § 59B.

66. Alternatively, Principal Forrest possesses final policymaking authority with regards to enforcement of District policy and/or practice at the School.  G.L. c. 71, § 59B.

67. Superintendent Welch possesses final policymaking authority with regards to hiring and firing of teachers.  G.L. c. 71, §§ 42, 59B.

68. Superintendent Welch terminated LaVallee.

69. Superintendent Welch ratified the termination of LaVallee.

70. Superintendent Welch approved of the termination of LaVallee.

71. Defendants have a practice of terminating employees for protected speech.

72. Defendants terminated Dedham High School football coach David Flynn for protected speech.  See https://www.bostonglobe.com/2021/05/05/opinion/did-questioning-his-daughters-world-history-course-make-david-flynn-unfit-coach-football/.

73. Upon information and belief, Defendants terminated Andrew Daitsman, PhD, for protected political expression.

74. Defendants have a practice of terminating employees because of religion.

75. Public School officials, including Principal Forrest (then assistant vice principal), discriminated against, retaliated against, harassed, disciplined, and attempted to terminate Dedham High School teacher Marlene Paul because she is Jewish and observes Jewish holidays.

76. Public School officials said "That Jewish woman doesn't need to take 2 days off for the holiday," referring to Paul, when discussing her observance of Jewish holidays in an

administrative meeting. One School official at such meeting described the discussion as antisemitic, as Principal Forrest questioned Paul's observance of Yom Kippur.

77. School officials, including Principal Forrest, targeted Paul for discrimination and retaliation, *e.g.*, Principal Forrest failed Paul in a classroom observation and issued false criticisms and unfounded reprimands. School officials, including Principal Forrest, have engaged in the same pretextual behavior against LaVallee.

78. School officials, including Principal Forrest, increased Paul's class size to overburden Paul, *e.g.*, Principal Forrest failed Paul in a classroom observation. School officials, including Principal Forrest, have engaged in the same pretextual behavior against LaVallee.

79. As alleged by Paul in her MCAD complaint, School officials also targeted another School employee because she is Jewish and observes Jewish holidays.

## COUNT ONE

## FEDERAL FREE SPEECH CLAIM

## AGAINST ALL DEFENDANTS

80. LaVallee realleges and incorporates Paragraphs 1 - 79 as if fully set forth herein.

81. The Defendants' actions complained of herein violate LaVallee's Free Speech rights under the First and Fourteenth Amendments of the U.S. Constitution. This claim is brought pursuant to 42 U.S.C. § 1983.

## COUNT TWO

## FEDERAL FREE EXERCISE / ESTABLISHMENT CLAUSE CLAIM

## AGAINST ALL DEFENDANTS

82. LaVallee realleges and incorporates Paragraphs 1 - 79 as if fully set forth herein.

83. The Defendants' actions complained of herein violate LaVallee's Free Exercise rights and the Establishment Clause under the First and Fourteenth Amendments of the U.S. Constitution.  This claim is brought pursuant to 42 U.S.C. § 1983.

## COUNT THREE

## FEDERAL SUBSTANTIVE DUE PROCESS CLAUSE CLAIM

## AGAINST PRINCIPAL FORREST

84. LaVallee realleges and incorporates Paragraphs 1 - 79 as if fully set forth herein.

85. Principal Forrest's actions complained of herein violate LaVallee's right to substantive due process, liberty, bodily integrity, and to be free from threats to bodily integrity, under the Fifth and Fourteenth Amendments of the U.S. Constitution.  This claim is brought pursuant to 42 U.S.C. § 1983.

## COUNT FOUR

## STATE FREE SPEECH CLAIM

## AGAINST INDIVIDUAL DEFENDANTS

86. LaVallee realleges and incorporates Paragraphs 1 - 79 as if fully set forth herein.

87. The Individual Defendants' actions complained of herein violate LaVallee's Free Speech rights under the U.S. Constitution, the Massachusetts Constitution (Art. XVI, Amendment Art. LXXVII), and G.L. c. 12, § 11H.  This claim is brought pursuant to G.L. c. 12, § 11*I*.

## COUNT FIVE

## STATE FREE EXERCISE AND ESTABLISHMENT CLAUSE CLAIMS

## AGAINST INDIVIDUAL DEFENDANTS

88. LaVallee realleges and incorporates Paragraphs 1 - 79 as if fully set forth herein.

89. The Individual Defendants' actions complained of herein violate LaVallee's Free Exercise rights and the Establishment Clauses under the U.S. Constitution, the Massachusetts Constitution (Art. II, III, Amendments Art. XLVI and XLVIII), and G.L. c. 12, § 11H.  This claim is brought pursuant to G.L. c. 12, § 11*I*.

## COUNT SIX

### STATE SUBSTANTIVE DUE PROCESS CLAUSE CLAIM

### AGAINST PRINCIPAL FORREST

90. LaVallee realleges and incorporates Paragraphs 1 - 79 as if fully set forth herein.

91. Principal Forrest's actions complained of herein violate LaVallee's right to substantive due process, liberty, bodily integrity, and to be free from threats to bodily integrity, under the U.S. Constitution, the Massachusetts Constitution (Art. X; Amendments, Arts. XXXIX, XLIII, XLVII, XLVIII, The Initiative, II, sec. 2, XLIX, L, LI and XCVII.), and G.L. c. 12, § 11H.  This claim is brought pursuant to G.L. c. 12, § 11*I*.

## COUNT SEVEN

### TORTIOUS INTERFERENCE WITH ADVANTAGEOUS/CONTRACTUAL RELATIONSHIPS

### AGAINST INDIVIDUAL DEFENDANTS

92. LaVallee realleges and incorporates Paragraphs 1 - 79 as if fully set forth herein.

93. LaVallee had an advantageous/contractual relationship with the District.

94. The Individual Defendants were aware of LaVallee's existing advantageous/contractual relationship with the District.

95. The Individual Defendants, with malice and through improper motives and/or through the use of improper means, intentionally interfered with LaVallee's advantageous/contractual relationship with the District.

## COUNT EIGHT

## WRONGFUL TERMINATION

## AGAINST ALL DEFENDANTS

96. LaVallee realleges and incorporates Paragraphs 1 - 79 as if fully set forth herein.

97. The Defendants' conduct set forth in this count constitutes wrongful termination in violation of public policy, including Free Speech, Free Exercise, and Establishment Clause.

## REQUESTS FOR RELIEF

**WHEREFORE**, LaVallee respectfully requests that this Court:

98. Enter judgment in LaVallee's favor on all Counts;

99. Award compensatory damages;

100. Award emotional damages;

101. Award punitive damages;

102. Award the costs of this action including reasonable attorneys' fees;

103. Award all permissible legal interest; and

104. Order such further relief as this Court deems just and proper.

## JURY CLAIM

105. Plaintiff Thad LaVallee hereby demands a trial by jury on all counts that are so triable.

Respectfully submitted,
Plaintiff Thad LaVallee,
By his attorney,


 /s/ Lucas Newbill
Lucas Newbill, BBO No. 697176

Law Offices of Lucas Newbill
P.O. Box 1741
Brookline, Massachusetts 02446
Tel. 617-918-7567
Fax. 617-910-2514
lucas@lucasnewbill.com

Date: April 14, 2022